for the plaintiff and appellant, Ms. Cannata, and may it please the court. I think that, you know, we can talk about, and your honors are well familiar with these issues, I think, based on the statements that you made and based on the fact that there's been some stuff going on in this area, so to speak. And I think the bottom line is this. We can talk from an intellectual point of view, and we can talk about what the cases say or what's going on in the law, with respect to folks that are intelligent, your honors, some of the attorneys out here. But the real case, the real meaning of this case, and I think the real test of this case, is the issue about this justifiable reliance and what a regular person out on the street thinks about cigarette smoking, starting as a minor, as this Ms. Cannata did before 1969, and what happened to her. And I think the best statement about these, all these cases, and I'm not really familiar with the other issues in the other cases that are sort of semi-combined with this one today, was the statement by Patricia Henley in the Philip Morris case, where she said, when asked about what she knew about cigarette smoking, quote, in her deposition, there's a lot, or perhaps it was a trial, there is a lot of different degrees of danger. It's dangerous to walk across the street. When you're hooked on something and you have the need to have that, you don't listen to that type of warnings. Maybe if the tobacco company had come out and said, our product is dangerous, but I was listening and seeing things that the surgeon general was saying that the tobacco companies were saying different. Let me just ask you, on this question of common knowledge, why shouldn't we certify this question to the California Supreme Court? Well, I think that would be perhaps an appropriate thing to do. Who would approve of that? I don't have an objection to that, because I don't think that there's any doubt that what's happening here, and the reality is, is that this case was filed in state court, and then it was removed, and the court below felt, because of the opinions and I'm not trying to offend anyone, of this court, that it had to dismiss the state court defendant. Why would that statement offend us? I don't know. But it had to dismiss the state court defendant, based on the statute of limitations, without ever hearing one statement or seeing one deposition testimony from this plaintiff about what she knew, what that market may have told her about cigarette smoking. But otherwise, Solomon would void your claim, would it not? Well, Solomon does bar the claim to an extent, except Solomon did not consider, I think, the difference between Solomon and this case, is that Solomon did not consider the issue of her being, in our case, a minor, and a pre-1969 beginning use of cigarettes. I think that's the difference factually, among other things. And also, there's the issue about us alleging this conspiracy in respect to the last overt act. I think that's the other, the two other differences. And I don't want to say that Solomon was wrongly decided, but I can say this, that there has not been any California cases that have followed Solomon. No state case has followed that. In fact, every state case that's been decided, and whether it be on review or not, has gone the other way. But you mentioned the last overt act. When do you argue that the last overt act of the civil conspiracy was committed? Well, I think it continued at least until a year before, or at the earliest, a year before the filing of this complaint. To meet the statute of limitations. It was unclear to me from your briefs what exact date you were arguing. I believe that in the complaint, I think it was alleged that it continued up until approximately a year before this case, or less than a year, perhaps, before this case was filed. And, of course, that overt act would sort of toll the statute of limitations because the bad acts continued, if that were the case. And I think, once again, it's a pleading. You know, this is extremely early in the game. What are we going to, are we going to kick these cases out without ever hearing from the plaintiffs and without ever hearing from the California Supreme Court on the issue, before ever hearing from the California Supreme Court on the issue? In other words, if this case was continuing on, if it was down below and continuing on, then there would be a good possibility to learn more about what the California courts were doing and prevent forum shopping by the defendants in this case. Because, undoubtedly, they removed the case because they thought, I mean, this is not one of those traditional removal of necessity types of cases where we were in the deep south and removed the case to try to ensure that we got a fair jury. This is one of those cases, and I'm not trying to offend the defendants, where there's no doubt, and this happens all the time, that they think they can get a better result in the federal court. Maybe they think they can get a fair hearing in the federal court. You don't. You can't know their motive. Can you? Well, I have a lot of experience over the years in having removal issues come and go. I don't assume their motive. And I can assume their motive. That's to assume your assumption. Is that true? True. I don't have evidence on that subject, but I can tell you. There's nothing wrong with a defendant removing a case to federal court if it comes within the statutory requirements. Absolutely. They're entitled to it. I have a technical question back to the forum. Uh-oh. Maybe it's not technical. But I think I understand how the Ninth Circuit Solomon case affects tort claims and conspiracy claims and the issues of whether or not that should be certified. What I wasn't clear on in my own mind was what about the state statutory claims? There's some statutory claims, aren't there? There are. Like unfair methods of competition? Yes. What are the limits? Are those before us now as well? They are in my ---- Are the limitations issues on the statutory claims controlled by Solomon? Well, I don't know that they were necessarily put forth as such in the Solomon opinion. So if they weren't, then I guess they aren't. But from a realistic point of view, I think that the defendants and the courts below will look to Solomon on that issue, as this Court did, and consider Solomon to be binding. But I don't necessarily believe that those issues were decided in Solomon. And I think that's why it's important. And these are important, as Your Honors can well imagine. These are important cases because the bottom line is, is these kinds of cases, cases like Solomon where the person was a pro per, I believe, if I'm not mistaken when he argued before the Ninth Circuit, are extremely devastating decisions to one side or another. And they're extremely important. I think it's important for the courts to take a really good look at this type of an issue in this case because of that and make sure that we're doing the right thing. Thank you. Can I have a vote sometime? Sure. Good morning, Your Honors, and may it please the Court. Daniel Collins on behalf of the appellees in this matter. Solomon is, in fact, controlling in this case. Indeed, in the opening brief in this case, the only issue raised was whether or not the civil conspiracy doctrine of the Wyatt case provided grounds for getting around Solomon. No other grounds for avoiding Solomon was asserted in the opening brief. No request for certification was made. No other ground was presented. The judge in this case, Judge Collins, granted leave to amend after an initial motion to dismiss based on Solomon grounds in order specifically to allow the plaintiff to have the opportunity to identify a last overt act within the relevant time period. Having afforded that opportunity, the only overt act that was alleged and that was the basis of the invocation of Wyatt was a continuing conspiracy with respect to lights, that light cigarettes provided the factual hook as the last overt act. The problem, though, is that it is undisputed in this case that Ms. Cannata did not smoke light cigarettes, and therefore that is not an overt act that inflicted any damage upon her. And the Tittlebaum case, which we cited in our papers, makes clear that the last overt act has to be one that causes damage. That means that there simply was no factual predicate after having been afforded an opportunity to come up with an overt act that would allow a factual basis in this case for a Wyatt theory. The plaintiff was unable to do so. Judge Collins therefore dismissed the case with prejudice on the second round based on Solomon. Mr. Collins, assuming we don't have a statute of limitations problem, the Solomon case says that California law presumes knowledge of the risk of tobacco smoking or tobacco. Is that a rebuttable presumption? In this case, actually, in the opening brief, the plaintiff did not contest that there was common knowledge as a matter of law after 1969. The only argument made was that she had a viable fraud claim. She contested common knowledge pre-1969 and said that that viable claim, in her view, viable claim was sustained under the Wyatt doctrine. But no argument was presented that common knowledge, that contested that common knowledge existed as a matter of law after 1969. I believe that under Solomon it is common knowledge as a matter of law, presumed under California law as a matter of law. I believe that that is what Solomon says. Thank you. Does common knowledge that tobacco is addictive, does it matter if there's not common knowledge about the degree or extent of addictiveness? It doesn't. As Solomon notes citing the Nagala case on, although Nagala was an issue of statutory immunity, it cites Nagala. Solomon itself cites Nagala in the context of the common knowledge discussion. And notes that the California Supreme Court applied Nagala, in Nagala, applied the immunity statute to addiction claims on the grounds that there was common knowledge of addiction. That's one of the bases that Solomon reaches that conclusion. It's noteworthy that in Nagala the court specifically says that there does not need to be common knowledge of every underlying risk. It cites the American Tobacco case and quotes the discussion in American Tobacco, footnote 5, that says it is sufficient that an ordinary consumer is aware that the product is dangerous and does not need to know every subsidiary risk of the product. That's in the Nagala case, which is cited in Solomon. I think you answered. You got that question answered for me. But what about my technical question I asked the appellant about how the statutory limitations periods are affected by Solomon? No issue was raised in this case, I believe either below and certainly not in the opening brief, that argued that there was a difference because there were claims under 17200 or otherwise. A 17200 individual claim and a 17500 false advertising individual claim sounds in fraud and therefore is, I think, subject to exactly the same analysis in Solomon in terms of continuing court. But, of course, that argument was not even raised in this case. The only argument really is the Wyatt argument. The other point I submitted in a 28-J letter, the Thompson case, which I think amplifies the point that we made in our brief relying on applied equipment, that the Overt Act not only has to be within the limitations period, but it has to be actionable conduct within the limitations period. And Wyatt itself makes that clear. It says that the tortious conduct was ongoing within the limitations period. And Solomon, that makes Solomon on all fours with respect to civil conspiracy because Solomon addresses the viability of continuing tortious conduct sounding in fraud within the limitations period and holds as a matter of law that it cannot be satisfied because of the lack of justifiable reliance. Scalia. Excuse me. At some point before you sit down, you might want to comment on the question that Judge Nelson asked regarding certification to the California court. I gather you say there's no need to because you think we have a Ninth Circuit authority that controls, but you may want to speak directly to that point at some point before you sit down. I have the same question. And I was waiting. Certification is presented directly in the Grisham case and not directly in this case. But we don't think that certification is appropriate for a number of reasons. First, it's not – certification does not exist as a vehicle and it's not appropriately used as a vehicle to collaterally attack a panel decision of this Court on an issue of State law. In the FDIC v. McSweeney case. But the reason one would certify is not because it did, but because it made certain assumptions as to what California law was, didn't it? I don't think it did. It – at least – Your Honor may be referring to the underlying question, which is one of the questions sought to be certified in Grisham about whether or not addiction is a compensable injury. What the – what the Court did in Solomon was to say it did not need to decide whether or not that was an appreciable injury for purpose of California law because the complaint takes the position that it is and the plaintiff is not in a position to ask the Court and cannot ask the Court to ignore that in construing the applicability of the statute of limitations. So it didn't actually make an assumption about what California law might or might not be on that point, but said that it doesn't need to be reached and certainly should not be reached in the context of a case where the complaint makes the kind of allegations it did in Solomon and as it does here. Indeed, this case is an even clearer case than Solomon because there's actually a request in paragraph 142 of the complaint for recoupment of money spent on cigarettes because of addiction. So there's – not only is it alleged as an injury, but money is sought, compensation is sought for it. It might be conceivably appropriate – for example, there were eight judges of this court in Aledo v. Glock who sought to take a case en banc in order to certify it. That might be a different question, but certification is not appropriately used by a panel to collaterally attack another panel decision. The intervening California decisions, are those relevant? Whether a – whether the panel could exercise discretion to certify a State law question where some real issue has been raised by what the State courts have done after a decision, that seems a little different than just a collateral attack on the first decision. I think this Court has referred to intermediate California appellate decisions as data, and they're not binding. They are data for what the California Supreme Court might do. The only published decision that we have that in any way addresses Solomon, and it addresses only one aspect of Solomon, is the Whiteley case. And I don't believe that it provides a sufficient basis for a certification to the California Supreme Court in this case. The Solomon discussion occurs conceitedly, I think, in dicta. Now, they didn't expressly concede it was dicta, but they referred to Barker's discussion of common knowledge as dicta, even though the – what made Barker's discussion in Whiteley's eyes dicta was exactly the same that makes it dicta in Whiteley. They found the issue of common knowledge had been waived by a failure to raise it below. And its discussion in dicta on that limited point doesn't reach any of the other issues sought to be certified and provides no basis for questioning it. We'll add a couple of minutes if you want to address certification further. I think that certification is also not appropriate. There's no issue raised here, and I'll address it again perhaps in the Grisham case with respect to the one or two injury rule. That's not even raised within Kanata at all. It was not raised below. It's not raised in the opening briefs. But Kanata certainly would be an inappropriate vehicle in light of the limited issues raised. And the issue is limited because even assuming common knowledge, the statute of limitations would apply in any event in this case. Is that what you're saying? I'm saying that because Wyatt, the only argument made against Solomon was Wyatt. There was no argument in the opening brief that there was – that challenges post-1969 common knowledge. Its only challenge is pre-'69. The only argument made was Wyatt's civil conspiracy. The case stands or falls on that. It clearly falls, as Judge Collins recognized. She gave them a chance to try and fit within it, and they failed to do so. It simply doesn't present the kinds of issues that would possibly warrant certification. Thank you. Thank you, Your Honor. Good morning again, Your Honor. I think, first of all, I want to make sure that the record's correct. I don't believe that there's any allegation in the complaint that she did not smoke light cigarettes. I don't believe that that's in there anywhere. But even if she did not, I don't necessarily believe that that is the case. I don't think that in and of itself would preclude her claims because she alleged that she – one of the things that she would allege, and if she didn't in this complaint, she should have been granted leave to amend if that was the issue. The real issue why the court below dismissed the case was because of Solomon. But the fact of the matter is, is she still was relying on the beliefs that were being set down by the tobacco companies. And that light cigarette issue is an important issue on that, and it was a statement made not to deceive just the people that were smoking light cigarettes, but to deceive everybody in the general public to get them to believe the tobacco companies and to continue to keep them smoking. I think that's a realistic look at what the tobacco companies were doing. They were not simply trying to keep the light smokers. They were trying to attract the new smokers and the ones that were smoking the other cigarettes. That's what really was happening there. So I don't think this light issue, the fact that she did or did not smoke light cigarettes, precludes this last overt act issue. Secondly, we see this. I go into the Union 76 station, and it says we do not use MTBE. I go into some gas stations, and it says MTBE is known to cause cancer. Well, is this a 99 percent risk, and if so, I'm never going to use that gas again? Or is it a .000000001 percent risk? And then maybe some people will because of convenience, because there's not another gas station in the neighborhood. So when Your Honor was talking about the nature and extent of the fraud, that is a key element to these kinds of misrepresentations, because simply because you go to Some people think he's innocent, this thing, before you pick a jury. And then some people say, I don't know. Even with all that publicity out there, all that common knowledge, some people say, I don't read the papers. I don't read the magazines. I don't watch TV. So aren't we supposed to look at what Ms. Cannata knew or did not know, and whether she's a qualified juror, so to speak, in these cases? Or are we supposed to just say, well, here we are. The Surgeon General put out a warning, said it may be hazardous to your health. May. I remember when I was a little boy, that was the first statement that came out. It wasn't is. It wasn't 95 percent chance is. It wasn't will cause heart attacks. It wasn't will cause cancer. The jurors may have seen what's out now, and what's out now is three people on the casket. And it says one out of four people who smoke cigarettes are going to be dead. So that argument will carry for a little while, but sooner or later that won't be. But Ms. Cannata was in the no-knowledge situation about that. So that argument carried till when? Thank you. We appreciate the argument on both sides. Thank you, Your Honor. The case will be submitted. We're getting triple duty from Mr. Collins today. Thank you. Thank you. Thank you.
judges: D.W. Nelson, Kleinfeld, Gould